IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-83234-TLS |
| | ) | |
| DOUGLAS THEODORE YOUNG | ) | CH. 7 |
| and FAYE ANN YOUNG, | ) | |
| | ) | |
| Debtors. | ) | |
| AMERICAN NATIONAL BANK, | ) | ADV. NO. A09-08089-TLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS THEODORE YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in Omaha, Nebraska, on August 6, 2010. Shaun M. James appeared for Plaintiff, American National Bank. Defendant Douglas Young appeared pro se.

Plaintiff seeks to have its indebtedness determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2). For the reasons discussed below, the relief requested is denied and Plaintiff's complaint (Fil. #1) is dismissed.

### *Background*

The undisputed facts are as follows:

1.      On or about January 24, 2007, Defendant executed and delivered to Plaintiff his promissory note in the original principal amount of $11,000.00.

2.      To secure the promissory note, Defendant also executed a security agreement granting to Plaintiff a security interest in a 1995 Mercedes-Benz SL-Class Roadster. The security agreement was executed by Defendant individually and by his corporation, Heritage Auto, Inc.

3.      Defendant was in the business of buying and selling used cars under the name of Heritage Auto, Inc. The business closed in 2009, shortly prior to Defendant's Chapter 7 bankruptcy filing.

4.      For reasons that are not entirely clear, Plaintiff failed to obtain the certificate of title to the 1995 Mercedes and, consequently, failed to note its lien on the certificate of title. It is also

unclear whether Plaintiff filed a Uniform Commercial Code financing statement to perfect its lien on the vehicle, which was apparently held as inventory for the business of Heritage Auto, Inc.

    5.    Defendant and/or Heritage Auto, Inc. sold the Mercedes in March 2007. Rather than remit the sale proceeds to Plaintiff, Defendant used the sale proceeds for payment of other business-related debt. Further, Defendant did not inform Plaintiff that he had sold the vehicle.

    6.    Defendant did continue paying the monthly payments due Plaintiff pursuant to his promissory note until early in 2009 when he succumbed to financial pressures, closed his auto sales business, and subsequently filed for Chapter 7 relief.

    7.    When the loan became in default in 2009, Plaintiff began pursuing its default remedies and, through that process, discovered that it had not perfected its lien on the vehicle. Plaintiff further discovered that the vehicle had been sold two years earlier.

    8.    Defendant acknowledged that it was common practice for him to use the proceeds from the sale of one vehicle to pay off indebtedness owed on a vehicle purchased and sold previously.

    9.    Defendant testified that he always intended to pay Plaintiff, just like he had on other loans. In fact, Defendant continued to pay Plaintiff for approximately two years after selling the vehicle, thereby reducing the debt to approximately $1,900.00.

*Discussion*

Plaintiff believes that the remaining indebtedness owed by Defendant should be determined to be nondischargeable under 11 U.S.C. § 523(a)(2)(A).[1]

Exceptions to discharge are usually "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998) (internal citation omitted).

Bankruptcy Code Section 523(a)(2)(A) excepts certain debts from discharge. It provides, in pertinent part, that a discharge:

---

[1] *See* Preliminary Pretrial Statement (Fil. #7) referring to false pretenses, false representations, or actual fraud. Plaintiff does not really say which subsection of § 523 it is proceeding under.

> does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A).

A creditor's success in a nondischargeability action for actual fraud under § 523(a)(2)(A) requires the creditor to prove, by a preponderance of the evidence, that: (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the misrepresentation. *Field v. Mans,* 516 U.S. 59, 74 (1995) (justifiable reliance); *Grogan*, 498 U.S. at 291 (burden of proof)*; Merchants Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (elements of proof under § 523(a)(2)(A)) (citations omitted).

To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *Moen*, 238 B.R. at 791 (quoting *Moodie-Yannotti v. Swan (In re Swan)*, 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Id.* (quoting *Van Horne*, 823 F.2d at 1287). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Id.* (quoting *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). *See also Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 653 (B.A.P. 8th Cir. 2007) (finding that the debtor's actions were more serious than simply using funds entrusted to him by customers to keep his business afloat; "Debtor had to have obtained these funds knowing that they would not be available to purchase the helicopters he promised the Plaintiffs to purchase"). The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

It seems that Plaintiff's reliance on § 523(a)(2)(A) is misplaced because it is clear that there is no evidence to support the position that Defendant obtained the loan through fraud or misrepresentation. The intent element is missing. There is no evidence that, at the time Defendant obtained the loan, he intended to defraud or made a fraudulent misrepresentation to Plaintiff. In fact, the evidence is quite to the contrary. It seems Defendant had every intention of repaying Plaintiff, and continued to pay Plaintiff for a period of two years after the collateral was sold. At worst, Defendant's actions in failing to pay off the Mercedes upon sale was a breach of the contractual security agreement. Absent evidence of fraud, debts arising from contract breaches are not excepted

from discharge in bankruptcy. *Nelson*, 357 B.R. at 514; *Integrated Practice Mgmt., Inc. v. Olson (In re Olson)*, 325 B.R. 791, 801 (Bankr. N.D. Iowa 2005).

Although Plaintiff failed to plead it, it seems that this action is better placed within § 523(a)(6), which excepts from discharge a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." The United States Supreme Court has explained that nondischargeability under this section is akin to an intentional tort, as it requires a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Thus, Plaintiff must prove not only that the proceeds from the Mercedes were diverted, but also that such diversion was intended to cause Plaintiff harm. Here, Defendant used the proceeds for his normal business operations and to keep his business afloat. Defendant continued to pay Plaintiff for a period of two years and, in fact, paid the debt down from $11,000.00 to approximately $1,900.00. There does not appear to have been any intent to harm Plaintiff.

IT IS, THEREFORE, ORDERED that the relief requested by Plaintiff is denied and Plaintiff's complaint (Fil. #1) is dismissed. Separate judgment to be entered.

DATED: August 18, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Shaun M. James
    Douglas T. Young
    Thomas D. Stalnaker
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.